Sally A. **DORNBERGER** on behalf of herself and all other persons similarly situated, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY,** Metropolitan Insurance and Annuity Company, Metropolitan Tower Life Insurance Company, Harry Kamen, Ted Athanassiades, Roy C. Albertalli, Phillip Briggs, Larry Brewster, Anthony Cannatella, John J. Creedon, Robert J. Crimmins, Harold Leff, James

Madera, Edmund Rakowski, Jeffrey G. Slane, George P. Slane, Richard N. Mauper, John D. McMahon, Stewart G. Nagler, M.S. Peress, Robert G. Schwartz, John H. Tweedie, Vito Vitone, Edward Walsh, Curtis H. Barnette, Joan Ganz Cooney, A. Luis Ferre, James R. Houghton, Helene Kaplan, George M. Keller, Richard J. Mahoney, Allen E. Murray, John J. Phelan, Jr., John B.M. Place, Hugh B. Price, William S. Sneath, and John R. Stafford, Defendants.

No. 95 Civ. 10374(LBS).

United States District Court, S.D. New York.

Oct. 5, 2001.

Bradford D. Conover, Conover & Zayas, LLP, New York City, Joel C. Feffer, Daniella Quitt, Wechsler Harwood Halebian & Feffer LLP, New York City, for Plaintiff Sally A. Dornberger in Her Individual and Representative Capacity.

Sheila L. Birnbaum, Irene A. Sullivan, Skadden, Arps, Slate Meagher & Flom LLP, New York City, for Defendants Metropolitan Life Insurance Company, Metropolitan Tower Life Insurance Company, Metropolitan Insurance and Annuity Company, Harry Kamen, Ted Athanassiades, Phillip Briggs, Larry Brewster, Anthony Cannatella, John J. Creedon, Robert J. Crimmins, Harold Leff, James Madera, Edmund Rakowski, Jeffrey G. Slane, George P. Slane, John D. McMahon, Stewart G. Nagler, Robert G. Schwartz, John H. Tweedie, Curtis H. Barnette, Joan Ganz Cooney, A. Luis Ferre, James R. Houghton, Helene Kaplan, George M. Keller, Richard J. Mahoney, Allen E. Murray, John J. Phelan, Jr., John B.M. Place, Hugh B. Price, William S. Sneath, and John R. Stafford.

*OPINION*

SAND, District Judge.

Before this Court are (1) an application pursuant to Fed.R.Civ.P. 23(e) for an order approving a settlement entered into between the parties, and (2) an application for an award of attorneys' fees and reimbursement of expenses. A hearing on the proposed settlement was held on September 25, 2001, and objections have been filed by two members of the plaintiff class. For the reasons stated herein, the settlement is approved and the application for attorneys' fees is granted to the extent indicated.

## I. BACKGROUND

Familiarity with the facts of this case is assumed. *See Dornberger v. Metropolitan Life Insurance Company,* 961 F.Supp. 506, 514—15 (S.D.N.Y.1997) (*"Dornberger I"*). In short, MetLife, a New York-based insurance company, began to sell insurance policies in Europe in 1957. The original plaintiff, a British citizen residing in Switzerland, purchased two insurance policies from MetLife in 1991 and 1993, insuring the life of her husband, Paul G. Dornberger, an American also residing in Switzerland. *See* Amended Complaint at ¶ 4. Plaintiff alleged that MetLife's European solicitations from 1957 to 1994 were in violation of the insurance laws of various European nations.[1] Plaintiff also alleged that MetLife (1) fraudulently represented that local representatives would be stationed overseas to provide service on the MetLife policies, (2) fraudulently represented that a 2.6% New York State franchise tax was required to be paid on all policies, and (3) fraudulently represented that the policies were subject to the New York State guaranty fund that would cover the policies in the event of insurer insolvency. *See Dornberger I,* 961 F.Supp. at 514. On August 24, 1998, this Court certified the plaintiff class pursuant to Fed.R.Civ.P. 23. *See Dornberger v. Metropolitan Life Insurance Company,* 182 F.R.D. 72, 84—85 (S.D.N.Y.1998) (*"Dornberger II"*). The Court of Appeals for the Second Circuit declined to accept an interlocutory appeal of this decision. *See Dornberger v. Metropolitan Life Ins. Co.,* 99–8004 (2d Cir. April 20, 1999). Thereafter, the parties engaged in settlement negotiations. *See* Plaintiff's Memorandum of Law in Support of Final Approval of Proposed Settlement ("Plaintiff's Memo") at 4.

---

**1.** Specifically, the nations include Switzerland, France, the Netherlands, Spain, Greece, Italy, Belgium, and Norway. The allegations concerning the United Kingdom relate to the period from 1967 to 1994.

After a comprehensive evaluation of discovery materials by counsel for both parties and arm's length negotiation by counsel, the parties agreed upon a stipulated settlement ("Settlement"). *See* Appendix A (Stipulated Settlement). In brief, the class members have the opportunity to receive one of three alternative types of relief: Category I, Category II, or Category III. Category I consists of those class members residing outside the United States on July 14, 2000 (the "valuation date") and who had an in-force policy or annuity at December 31, 1999 that was purchased in one of the applicable European countries during the class period. These class members receive a credit to the policy or annuity in the amount of the total premium paid to MetLife minus dividends, the estimated cost of insurance, and any withdrawals, all with interest compounded at 6% annually. Each Category I member will receive at least $500. *See id.* 8—9, 19.

Category II consists of class members who resided in the United States on the valuation date and who had an in-force policy at December 31, 1999 purchased in one of the applicable European countries during the class period. Category II provides a credit to the policy or annuity in the amount of 20% of the Category I credit, but not less than $200. *See id.* at 8, 10, 20.

Category III consists of class members regardless of residency whose policy or annuity was purchased during the class period and was terminated prior to December 31, 1999 other than by death. If a Category III member declares that he or she discontinued premium payments because of the alleged illegality of MetLife's operations as described in the complaint, the member has the ability to become a Category I or II member. Category III members who return a benefit voucher and proof of past ownership of a policy or annuity may opt to receive one of two free death benefits. One of the benefits provides, for a period of up to 59 months, a death benefit payable upon MetLife's receipt of proof of death within the prescribed period. The other provides, for three years, a death benefit payable upon MetLife's receipt of proof of accidental death during the period. *See id.* at 9—10, 21—23.

Two members of the plaintiff class have objected to the settlement, and 64 class members have elected to exclude themselves from the class.

## II. DISCUSSION

### 1. Fairness of the Settlement

"The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied sub nom. Lewy v. Weinberger,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). This Court must scrutinize both the negotiation process and the resulting proposed settlement.

▆ In determining whether a settlement, taken as a whole, is fair, reasonable, and adequate, the Second Circuit has articulated the factors to consider:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974) (citations omitted).

▆ This Court is satisfied that the proposed settlement is the result of an arm's length negotiation by experienced counsel and that it reflects an intelligent evaluation of the strengths and weaknesses of each party's case. This entire action has been litigated for over six years, and the settlement negotiation itself took two years. A trial at this stage, with its certain and predictable disputes over details that spanned nine countries for almost forty years, would be costly and lengthy, and the result would be in doubt.

Both parties, in analyzing this Court's prior decision and the strengths and weaknesses of their own cases, determined that the outcome of a trial would be uncertain. First, in *Dornberger I*, this Court limited the potential claims and damages of the plaintiff's suit. For instance, as to plaintiff's RICO claims, this Court found that plaintiff "did not suffer a RICO injury tantamount to the full amount of her premiums, because MetLife did not refuse to pay out on a claim, and hence Plaintiff to this extent received what she paid for." *Dornberger I*, 961 F.Supp. at 523. Moreover, this Court determined that the "§ 1962(b) claim must be dismissed for the same reason as her § 1962(a) claim—plaintiff has failed to plead any injury distinct from that which was caused by the predicate acts themselves." *Id.* at 527. Additionally, it was concluded that the plaintiff "has not stated a claim for full premium refund, but has instead stated a claim only for a partial refund—one which allows for the value of the insurance coverage received by her during the time her policies were in effect." *Id.* at 540. The plaintiff class counsel, in deciding to settle the case, have taken into account these limitations. For instance, the settlement allows policyholders to obtain restitution as opposed to the full expectation value at the time the policy was purchased.[2] Policyholders may elect to retain their life insurance coverage and gain access to a restitution credit,[3] or the policyholder may choose to obtain more complete restitution by surrendering the policy and receiving the cash surrender value augmented by the restitution credit. *See generally*, Affidavit of Charles C. Deweese ("Deweese Aff.") at 8—9 (explaining the method of restitution). This Court finds that the plaintiff class counsel took into account the weaknesses of its case based on this Court's prior decisions and developed a sophisticated system of restitution that would allow policyholders a degree of flexibility in choosing the form of damages.[4] For some, purchasing new life insurance protection at an advanced age might result in added costs, so there is a possible benefit in retaining the MetLife policy. *See id.* at 8—9.

Moreover, while the plaintiff class counsel's principal claim for rescission is based on the alleged illegality in each of nine European nations, this Court has previously noted that MetLife contends that it "had authorization to operate in certain countries and that its operations in other countries were *de minimus* and therefore did not require authorization." *Dornberger II*, 182 F.R.D. at 84. This claim and defense raise "complicated and disparate issues of foreign law" and "complex issues of proof [that have] already occupied the attention of numerous legal experts...." *Id.* at 78–79. The governing foreign insurance laws were arguably different in each country and may have changed during the class period, thus posing a significant hurdle for the plaintiff class attorneys to leap. There are additional choice of law issues that could hinder the plaintiff class' case, and with respect to policyholders who have returned to the United States, "[i]t is not clear, without the enlightenment the discovery process may provide, whether such plaintiffs would have any claim for damages upon a finding of liability." *Id.* at 83. Defendants also "contend that no one has been harmed, all policies have been honored and that the action is spurious as plaintiffs would not be entitled to any damages." *Id.* at 84. Even if the plaintiff class could win judgment, the settlement amount would certainly be in doubt, and this Settlement takes into account the plaintiff class' difficulties in winning judgment and proving damages.

2. The restitution value is determined by adding the premiums paid and subtracting the cost of insurance, taking into account interest on both sides of the equation.

3. The restitution credit is determined by subtracting the cash surrender value of the policy from the restitution value.

4. It should further be noted that the methodology for determining the value of the insurance coverage during the policyholders' lifetime involves an algorithm that, among other things, (1) interpolates among tables of term insurance rates offered at different times, (2) accounts for gender and age, and (3) distinguishes smokers and nonsmokers. *See* Deweese Aff. at 9—10. The Court finds this method a fair and rational method of determining an approximate value of individual relief.

The Settlement provides a total value of $20.8 million to the class—$13 million earmarked for Category I and II members, and $7.8 million to Category III members. The Court's finding of reasonableness is supported by affidavits of two experts who approve of the accounting that resulted in the Settlement figures.[5]

Finally, only two objections to the Settlement have been received and, as discussed below, neither is well founded. Only 64 class members have excluded themselves from the terms of the Settlement. *See* Plaintiff's Memo at 14.

## 2. Specific Objections and Other Issues Raised by the Settlement

### A. Categories of Recipients

First, Paul Hayes and Ellen Hayes object that the Settlement divides class recipients in Category I and Category II by one's residency in the United States. *See* Letter from Paul Hayes to Judge Sand (August 16, 2001) (objecting to the settlement only on grounds of the residency distinctions). However, the residency status goes to the heart of damages. By virtue of living in the United States, the Category II policyholders had access to MetLife policyholder service and the backing of guaranty funds in the event of insolvency. The residency status, then, is highly relevant—those living in the United States are provided with the services and protections that were denied to those living overseas during the relevant period. The Court finds no merit in this objection.

### B. Notice to the Class

■ Zlatka Cular objects that notice was insufficient because lapsed policyholders were not on the notification mailing list and could only learn of the settlement based on a Publication Notice in *The Wall Street Journal* and the *International Herald Tribune*. *See* Cular Affidavit ("Cular Aff.") at 12—13.

The class members in Category I and Category II received direct mail concerning this class action from a list compiled after eight months of review of 20,000 applications for in-force policies. *See* Defendant's Memorandum of Law in Support of the Class Action Settlement at 12–14; Affirmation of Rebecca Green ("Greene Aff.") at ¶ 37. Ms. Cular believes that the identities of the one-time holders of the 93,000 terminated policies should also be ascertained and contacted through the mail. However, 16,900 of those policies were purged from MetLife's systems between 1969 and 1989. *See* Greene Aff. at ¶ 38. In a sampling done of the remaining 76,000 terminated policies, MetLife reports that 85% were irretrievable, illegible, or had been destroyed after the policy terminated. *Id.* at ¶ 38. The sampling also indicates that only half of these 76,000 policies were sold in European countries during the class period. *Id.* at ¶ 39.

This Court finds that notice in this case was proper, fulfills the requirements of Federal Rule of Civil Procedure 23, and satisfies due process. Fed.R.Civ.P. 23(c)(2) (requiring "best notice practicable under the circumstances," and "individual notice to all members who can be identified through reasonable effort"). Rule 23 gives this Court considerable discretion in fashioning notice to a class. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). For instance, actual notice to all class members is not required. *See In re "Agent Orange" Product Liability Litigation MDL No. 381*, 818 F.2d 145, 168 (2d Cir. 1987); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not *reasonably possible or practicable* to give more adequate warning.") (emphasis added). Here, only Category III members did not receive direct mail. Many of these class members cannot be reached because the records have been purged, time has passed, or addresses have changed. *See* Greene Aff. at ¶ 38 (noting that "approximately 85% of applications were irretrievable, illegible, or had been destroyed after

---

5. *See generally,* Declaration of Stephen G. Hildenbrand (approving of the merits of the settlement agreement); Deweese Aff. (same).

the policy terminated"). Even if a partial mailing could be sent to the last known addresses of the known lapsed policy holders, about 38,000 people, or half of the total lapsed policies, would be wrongly notified because they were not in fact members of the class. *See id.* Instead, this Court approved two notices of publication in two newspapers with national and international reach.[6] This Court concludes that reasonable efforts were taken to notify all members of the class.

## C. Fairness

Ms. Cular objects to the fairness of the settlement on several grounds. First, she argues that the settlement rate of 6% interest is much lower than the dividend rate MetLife provided to other policyholders during the class period and is lower than the interest rate earned by MetLife from the policies at issue. Furthermore, she argues that the MetLife term rate applied in the Settlement is higher than if she "had bought the simple term policy from MetLife." *See* Cular Aff. at 3. However, Ms. Cular has no right to be made whole. *Id.* at 3. This is a settlement agreement, and there has been no judgment against MetLife. As already discussed, these specific terms of the settlement are reasonable in light of the plaintiff class' strengths and weaknesses. The 6% interest rate was negotiated between the parties and this Court will not say that an 8% market rate is a fairer estimate of market returns over the course of the class period.

The second major objection Ms. Cular raises is that similarly situated lapsed or rescinding policyholders are unfairly charged for the insurance protection that they did not receive, *Id.* at 5. She maintains that the Settlement does not fully compensate for the total net outlay of the policyholders. In fact, Ms. Cular will receive at least 80% of her net outlays and those of her husband. *See* Settlement Hearing Transcript at 37—37. While she asks this Court to view the several separate policies she and her husband purchased individually, the fact remains that an overall recovery of 80% in a settlement is a very fair if not generous recovery under these circumstances.

At the settlement hearing, Ms. Cular stated that lapsed policy holders in her position would be sure to receive substantially less than the amount they paid for the policies. *See id.* at 36. However, Ms. Cular, a former employee of MetLife, is in the rather unique position of having owned, together with her husband, six different MetLife policies. *See id.* at 33. It is certainly not clear to this Court that there are many lapsed policy holders in her position, and even if there were, this Court has found that her settlement of 80% of total outlays is reasonable. Regardless, Ms. Cular and her husband could have opted out of the Settlement but instead chose to remain in the class. Settlements necessarily involve a process of compromise and negotiation where parties are rarely made whole. If she believed that she could have won full judgment in court, Ms. Cular should have opted out of the class.

## D. Incentive Awards for Named Plaintiffs

■ The Settlement permits the plaintiff class counsel to petition this Court for incentive awards of up to $10,000 for plaintiff Sally Dornberger and up to $1500 for class members Joseph Anthony Miro, Franklin Craig, Frank Azevedo, Carlos Rodriguez–Del Valle, Athanasios Vellianitis, Paul Zahn, Massimo Corona, and David Vargas. "An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Berrios v. Sprint Corp.*, 1998 WL 1749828, *3 (S.D.N.Y.1998); *see also Roberts v. Texaco*, 979 F.Supp. 185, 187—88 (S.D.N.Y.1997) (approving incentive awards for a class plaintiff who "provided valuable

---

**6.** The first printing of the notice was on June 28, 2001 in the *International Herald Tribune*—which has a world-wide daily circulation of 234,722—and the national and international editions of *The Wall Street Journal*—which has a national and international edition circulation of 2,249,-

459. After the settlement hearing, at the Court's direction, the parties caused a second publication that was printed on October 4, 2001 in *The Wall Street Journal* and on October 8, 2001 in the *International Herald Tribune*.

assistance to counsel in prosecuting the litigation").

Sally Dornberger, in the last six years, has regularly communicated with the plaintiff class counsel, provided various documents and information material to the action, traveled to New York City for her deposition at her own cost, and contributed to the settlement of the action. *See* Affidavit of Bradford D. Conover ("Conover Aff.") at 14—15. The other eight subclass representatives participated in this case "by agreeing to represent the various subclasses, by providing documents necessary to make the appropriate selection of subclass representatives and by regular communications for more than two years concerning the prosecution and settlement of the action." *Id.* at 15; *see also Dornberger II*, at 84—85 (ordering the creation of subclasses to represent each of the affected nations).

The amount requested by plaintiff class counsel is reasonable in light of other incentive awards. *See Roberts*, 979 F.Supp. at 188 (incentive award of between $2500 and $85,000 depending on participation in the action); *Schenek v. FSI Futures, Inc.*, 1999 WL 33872, *1 (S.D.N.Y.1999) (incentive award of $2500 to each of seven named plaintiffs who came to New York to be deposed). Finally, these incentive awards are small in relation to the $13 million Category I and Category II fund from which the awards will be made.

### 3. Attorneys' fees

#### A. Fairness of Attorneys' Fees

■ The Settlement provides that the plaintiff class counsel may make an unopposed application for attorneys' fees and expenses not in excess of $5.1 million, and plaintiffs class counsel makes an application for that amount. *See* Settlement at 35; Plaintiff's Memorandum in Support of Application of an Award for Attorney's Fees at 1. Ms. Cular voices the only objection to attorneys' fees for the plaintiff class counsel.[7] The plaintiff class counsel requests $5.1 million in attorney's fees and expenses— $251,919.83 in total expenses and $4,848,080.17 in total attorneys' fees. *See* Conover Aff. at ¶ 35—36. The lodestar, i.e., the number arrived at by multiplying hours spent by the prevailing hourly rates, is $1,229,538.00 for Conover & Zayas, LLP/Dickerson & Reilly; $173,240.00 for Quinn & Suhr, Marantis & Rosenberg; and $1,137,425.50 for Wechsler Harwood Halebian & Feffer LLP. The total lodestar is $2,540,203.50. *See* Conover Aff., Ex. 2. The Settlement structures the attorneys' fees so that they are separate from and not a deduction from the Settlement award to the plaintiff class. *See* Settlement at 35.

■ Regardless of whether this Court uses the percentage-of-the-fund approach or the lodestar approach, the amount requested by plaintiff class counsel and unopposed by defense counsel is fair and reasonable as modified hereunder. *See, e.g., In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 431 (S.D.N.Y.2001) ("Although the law in this Circuit has not been uniform, the trend of the district courts in this Circuit is to use the percentage of the fund approach to calculate attorneys' fees."); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir.2000) (approving both the lodestar approach and percentage approach). Under either method, the fees awarded do not exceed what is reasonable under the circumstances in common fund cases. Regardless of the approach used, the court is to decide if the fund is reasonable in light of the factors summarized in *Union Carbide*: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the represented fee in relation to the settlement; and (6) public policy considerations." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F.Supp. 160, 163 (S.D.N.Y.1989).

---

7. *Ms. Cular does not necessarily object to the amount of the settlement; instead, she argues that Mr. Conover, a lawyer for the plaintiff class, misled her into thinking that the attorney's fees would be only $1.2 million. See Cular at 16. However, as Mr. Conover stated at the settlement* hearing, the $1.2 million figure was in reference to the fees of his own firm. This Court finds that the dispute was merely a misunderstanding between the parties that does not materially affect the fairness of this Settlement.

If the percentage-of-the-fund approach is used, the fee requested in this case is less than 20%, which is within the range of other awards in this district. *See, e.g., American Bank Note Holographics,* 127 F.Supp.2d 418, 422 (S.D.N.Y.2001) (granting 25% of the settlement amount); *In re RJR Nabisco, Inc. Securities Litigation,* 1992 WL 210138 (S.D.N.Y.) (25% of settlement fund). If the lodestar method is used, the multiplier of 1.9 is comparable to multipliers used by the courts. *See, e.g., Dubin v. E.F. Hutton Group Inc.,* 878 F.Supp. 616, 621 (S.D.N.Y. 1995) (1.25% of settlement fund); *In re Fine Host Corp.,* 2000 WL 33116538 (D.Conn.2000) (using a 2.6 multiplier for a "cross check" on the percentage approach where the court awarded 17.5% of the settlement amount and noting other cases where multipliers of 1.5–1.72 were used).

The expenses requested by plaintiff class counsel are reasonable, and this Court approves expenses in the amount of $251,919.83. This Court finds that the attorneys' fees are reasonable as modified hereunder because counsel spent six years on this litigation before it settled, the fees are comfortably within the range awarded by federal courts, and the plaintiff class counsel attained a positive result considering the strengths and weaknesses of the case.

### B. Deferring A Portion of Attorney's Fees

The Settlement provides, "[t]he Parties, their successors and assigns, and their attorneys undertake to implement the terms of this agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement." Settlement at 45.

The Settlement provides that attorneys' fees are to be paid in a lump sum. The Court awards the plaintiff class counsel $4,363,272.15, i.e., the requested $4,848,080.17 less 10%. The remaining $484,808.02 requested by plaintiff class counsel will be held in a separate interest bearing account and will constitute a fund out of which class counsel will be compensated for time spent implementing the settlement. Plaintiff class counsel will receive compensation from the fund on application to the Court as implementation of the settlement progresses.[8] *See, e.g., Rabin v. Concord Assets Group, Inc.,* 1991 WL 275757, *1 (S.D.N.Y.) ("In view of the uncertainties surrounding the amount of time counsel will be called upon to devote in discharging their continuing monitoring obligations, the concept of deferring a final determination of the fee amount and setting aside a sum of money for eventual award to counsel or return to the class, commends itself to the Court."); *Ramah Navajo Chapter v. Babbitt,* 50 F.Supp.2d 1091 (D.N.M. 1999) ("The Court will defer distribution of a portion of the second fees payment, if it deems such action to be necessary to guarantee completion of any remaining legal representation after distribution to the class is complete").

### III. CONCLUSION

For the reasons stated herein, the Settlement is approved and certain plaintiffs are granted the requested incentive fees. The application for attorneys' fees is granted with the deferment of 10% of the fees as described herein.

### APPENDIX A

### Stipulation of Settlement

### Appendix A (Exhibits Omitted)

## Table of Contents

Index of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

  I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
    A. Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

**8.** When all class members are paid, the remaining money in the separate account will revert to MetLife.

    B.   The Lawsuit ...................................................129
    C.   Settlement....................................................129
 II.  DEFINITIONS ......................................................130

III.  SETTLEMENT RELIEF ............................................135
    A.   Introduction .................................................135
    B.   Category I Relief .............................................136
    C.   Category II Relief ............................................136
    D.   Category III Relief ...........................................136
        1.  Settlement Death Benefit ..............................136
        2.  Accidental Death Benefit...............................137

 IV.  DISTRIBUTION OF RELIEF......................................138
    A.   Category I and II Relief ......................................138
    B.   Category III Relief...........................................138
    C.   Guidelines to Apply When Relief is Available Under the MDL
         Settlement................................................138

  V.  GUIDELINES FOR CATEGORY III CLASS MEMBERS FOR APPLY-
      ING FOR CATEGORY I OR CATEGORY II CLASS MEMBERSHIP.....138

 VI.  NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS
      MEMBERS......................................................139
    A.   Introduction .................................................139
    B.   Class Notice Package ........................................139
        1.  Class Notice...........................................139
           a.  General Terms.....................................139
           b.  Notice of Exclusion and Objection Rights ..........139
           c.  Notice of Fees and Expenses ......................139
        2.  Release ...............................................140
        3.  Benefit Voucher .......................................140
        4.  Information Statement..................................140
    C.   Publication Notice ...........................................140
        1.  Benefit Voucher .......................................140
        2.  Application for Category I or II Relief ...................140
    D.   Right of Communication with Claimants and Company Customers ..........140
    E.   Retention of Administrator ...................................140
    F.   Media Communications ......................................140

 VII.  RELEASE AND WAIVER AND ORDER OF DISMISSAL ..................141
    A.   Release and Waiver ..........................................141
    B.   Order of Dismissal ..........................................142

VIII.  ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS ........143

 IX.  ORDER OF PRELIMINARY APPROVAL, NOTICE TO THE CLASS,
      FAIRNESS HEARING, AND ADMINISTRATION .......................144

  X.  FINAL APPROVAL AND FINAL ORDER .............................144

 XI.  MODIFICATION OR TERMINATION OF THIS AGREEMENT..............144

 XII.  GENERAL MATTERS AND RESERVATIONS ...........................145

## Index of Exhibits

Exhibit

Class Action Notice Package ................................................... A
Publication Notice ............................................................. B
Preliminary Approval Order .................................................... C
Confidentiality Agreement ..................................................... D
Final Order ................................................................... E
Benefit Voucher ............................................................... F
Simplified Underwriting ....................................................... G

IT IS HEREBY STIPULATED AND AGREED, by, between and among Sally A. Dornberger, on her own behalf and in her representative capacity ("Plaintiff") and Metropolitan Life Insurance Company, Metropolitan Insurance and Annuity Company, Metropolitan Tower Life Insurance Company (hereinafter collectively "MetLife" or the "Company"), Harry Kamen, Ted Athanassiades, Roy C. Albertalli, Phillip Briggs, Larry Brewster, Anthony Cannatella, John J. Creedon, Robert J. Crimmins, Harold Leff, James Madera, Edmund Rakowski, Jeffrey G. Slane, George P. Slane, John D. McMahon, Stewart G. Nagler, Robert G. Schwartz, John H. Tweedie, Curtis H. Barnette, Joan Ganz Cooney, A. Luis Ferre, James R. Houghton, Helene Kaplan, George M. Keller, Richard J. Mahoney, Allen E. Murray, John J. Phelan, Jr., John B.M. Place, Hugh B. Price, William S. Sneath, and John R. Stafford (hereinafter collectively referred to together with MetLife as "Defendants") through their duly authorized counsel, that the class action lawsuit captioned *Dornberger v. Metropolitan Life Insurance Co., et al.*, 95 Civ. 10374(LBS) (S.D.N.Y.) (the "Action"), and the matters raised by the Action, are settled, compromised and dismissed with prejudice, on the terms and conditions set forth in this Stipulation of Settlement and the attached exhibits, including any subsequent amendments hereto and any exhibits to such amendments (the "Agreement" or "Settlement Agreement") and the Release (defined below) set forth herein, subject to the approval of the United States District Court for the Southern District of New York (the "Court").

## I. INTRODUCTION

### A. Background

1. Plaintiff alleges that Defendants, without the permission or authorization from the various authorities and regulators in eight European nations, Spain, France, Italy, Greece, Norway, Belgium, Switzerland and the Netherlands, sold life insurance policies and annuity contracts to American and European citizens residing in those nations during the period from 1957 through 1994. In addition, Plaintiff alleges that from 1967 through 1994, MetLife sold life insurance policies and annuity contracts to American and European citizens residing in the United Kingdom without permission or authorization from regulators and authorities in that nation.[1]

2. MetLife's sales force stationed in Europe was referred to as the "Overseas Operation." Plaintiff alleges that as part of an overall scheme to conspire and defraud, Defendants conspired with unnamed third parties to carry out a pattern of fraudulent misstatements and omissions to avoid the detection of this Overseas Operation. Plaintiff, a British national residing in Switzerland, purchased two life insurance policies from MetLife. Plaintiff contends that Defendants were aware that the sales were illegal and took express measures to conceal an illegal sales scheme from the customers as well as from the authorities. Plaintiff also alleges, *inter alia*, that MetLife represented that local personnel would be permanently

1. The putative class defined in Plaintiff's Amended Class Action Complaint, filed December 18, 1996 (the "Amended Complaint"), was redefined, certified and conditionally certified by the Court. *See Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 84 (S.D.N.Y.1998).

stationed in Europe to provide personal servicing of the MetLife policies, with the cost of services included in the premiums to be paid to MetLife; and, that a 2.6% New York State franchise tax was required to be paid on all policies and that premiums were paid by the overseas policyholders in order to cover that tax. Plaintiff also alleges that Defendants fraudulently represented that the policies sold in Europe were covered by the New York guaranty fund, or any other guaranty fund, in the event of insurer insolvency, when in fact, the policies were not covered by any guaranty fund.

3. MetLife represents that it terminated its sales activities in the nine identified European nations in 1994. MetLife further represents that, at all times relevant to this matter, it has stood behind its policies and contracts, and has honored all of them. At all times, MetLife has taken the position, and continues to take the position, that they are indeed legal and valid New York contracts of insurance and annuities which Defendants were authorized to sell. MetLife represents that it will continue to honor and enforce the life insurance policies and annuities at issue pursuant to their terms.

B. *The Lawsuit*

1. Plaintiff commenced the Action in December 1995 on behalf of herself and all persons, excluding New York residents, who purchased life insurance policies and annuity contracts through the Overseas Operation from 1957 forward, and who at the time of the sales were in one of the nine specified European nations. The Amended Complaint asserts various claims, which include civil RICO claims. Defendants moved to dismiss the Amended Complaint, and although the Court dismissed certain claims in its March 26, 1997 ruling, other claims survived. *See Dornberger v. Metropolitan Life Ins. Co.*, 961 F.Supp. 506 (S.D.N.Y.1997). Plaintiff's remaining claims arise under federal law alleging violation of 18 U.S.C. §§ 1962(c) and (d), and under state law for fraud, breach of

contract, rescission based on illegality and fraud, negligent misrepresentation, breach of fiduciary duty, violation of New York Insurance Law §§ 4224, 4226 and violation of New York General Business Law § 349.[2]

2. On August 24, 1998, the Court certified a class of individuals who purchased insurance or annuity products that are still in force from MetLife's Overseas Operation, from 1957 through 1994 in Switzerland, France, Italy, Spain, the Netherlands, Belgium, Norway and Greece and from 1967 through 1994 in the United Kingdom. *See Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 84 (S.D.N.Y.1998). The Court also conditionally certified a class of individuals whose policies or annuities were purchased during the relevant time period and in the designated nations, but have subsequently lapsed. *See id.* In addition, the Court directed the certified class to be divided into nine subclasses, one for each nation in which MetLife allegedly sold insurance policies and annuity contracts without the approval of the local regulators and authorities. *See id.*

3. Defendants moved to certify the Court's Class Certification Order for immediate appeal under 28 U.S.C. § 1292(b). The Court granted the motion by Order of January 15, 1999. On April 20, 1999, the United States Court of Appeals for the Second Circuit declined to accept the appeal. *See Dornberger v. Metropolitan Life Ins. Co.*, 99–8004 (2d Cir. April 20, 1999) (order denying permission for immediate appeal).

C. *Settlement*

1. Before commencing this Action, throughout the pendency of the Action, and during settlement negotiations, Plaintiff's Counsel (defined below) and their professional consultants conducted a thorough examination and evaluation of the relevant law and the facts to assess the merits of their claims and potential claims and to determine how best to serve the interests of Plaintiff and the Class, as defined below. Plaintiff's Counsel conducted a complete investigation of the

---

**2.** The Court ruled that claims under N.Y. Insurance Law § 4226 could not be pursued in a class action and severed Plaintiff's claim under that

section for an individual trial. This claim is to be dismissed with prejudice pursuant to Section VII of this Agreement.

Action, and have conducted and continue to conduct formal and informal discovery. In addition, Plaintiff's Counsel retained and consulted with experts concerning the law in the nine nations during the Class Period, as defined below.

2. Based upon their discovery, investigation and evaluation of the facts and the law relating to the matters alleged in the pleadings, Plaintiff's Counsel have agreed to settle the Action pursuant to the provisions of this Agreement after considering among other things: (i) the substantial benefits available to Plaintiff and the Class under the terms of the Agreement; (ii) the attendant risks and uncertainty of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (iii) the desirability of consummating the Agreement promptly to provide effective relief to Plaintiff and the Class.

3. The proposed settlement has been reviewed by various consultants and experts retained by Plaintiff, and Plaintiff and her counsel have agreed that this settlement is fair, reasonable and adequate and that it provides substantial benefits to the Class, is in the best interests of the Class and resolves the claims alleged in a just and fair manner.

4. Defendants expressly deny any wrongdoing alleged in the Action. Defendants do not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Action. In addition, Defendants do not concede any infirmity in the defenses they have asserted or that any damages were sustained or are recoverable, nor do they concede the amount of any damages that may have been incurred. Nonetheless, Defendants consider it desirable for the Action to be settled and dismissed because this settlement will (i) provide significant benefits to the Company's present and former policy and annuity owners; and (ii) avoid the substantial expense, burdens and uncertainties associated with continued litigation of those claims.

## II. DEFINITIONS

A. As used in this Agreement and the annexed exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless a section or subsection of this Agreement or its exhibits expressly provides otherwise. Some of the definitions in this section use terms that are defined later in the section. All defined terms are capitalized and listed in alphabetical order.

1. "Accidental Death Benefit" or "ADB" means the form of relief available to Category III Class Members who had an ownership interest in an Annuity issued by the Company that Terminated on or before December 31, 1999.

2. "Action" means the class action lawsuit captioned *Dornberger v. Metropolitan Life Insurance Company, et al.,* 95 Civ. 10374(LBS) (S.D.N.Y.).

3. "Administrator" means the third-party administrator whom the Company will retain to help implement the terms of this Agreement.

4. "Affinity Group" means (i) the Class Member or his or her spouse, parent or child (including a stepchild residing with the Class Member), and/or (ii) any person in whom the class member has an insurable interest.

5. "Agreement" or "Settlement Agreement" means this Stipulation of Settlement and the attached exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

6. "Alternate Measuring Life" means, for purposes of any Settlement Death Benefit ("SDB") or Accidental Death Benefit ("ADB") provided for in this Agreement, a person who is a member of the Class Member's Affinity Group and is not the insured under the Policy or the annuitant under the Annuity making the Class Member eligible for relief.

7. "Amended Complaint" means the Amended Class Action Complaint in this Action.

8. "Annuity" or "Annuities" means any deferred annuity contract or certificate that

the Company issued to a Class Member pursuant to an individual sale, the application for which was executed in one of the nine designated European nations during the Class Period.

9. "Annuity Account Value" means the account value measured as of the date of termination for Terminated Annuities.

10. "Attorneys' Fees and Expenses" means such funds as may be awarded to Plaintiff's Counsel to compensate them (and all other attorneys for Plaintiff or Class Members in this Action) for their fees and expenses in connection with the Action, which in no event shall exceed five million, one hundred thousand dollars ($5,100,000).

11. "Benefit Voucher" means the voucher, substantially in the form annexed hereto as Exhibit F, which must be accurately and fully completed and returned to the Company by Class Members who owned a Terminated Policy or Annuity in order to receive the applicable SDB or ADB upon the Company's receipt of due proof of the qualifying death of the Measuring Life within the benefit period, as provided in this Agreement.

12. "Category I Class Member" means any Class Member who, according to the Company's records, resided outside of the United States on the Valuation Date and who had an In Force Policy or Annuity as of December 31, 1999, that was purchased during the Class Period in one of the designated European nations. Included in the definition is any Class Member who, according to the Company's records, resided outside of the United States on the Valuation Date and who owned a Policy that was In Force on April 25, 1994, but subsequently lapsed due to non-payment of premiums, and pursuant to Section V of this Agreement the Class Member submits a written declaration made under penalty of perjury that premium payments were discontinued primarily because of (i) the alleged illegality of the sale of the Policy, or (ii) MetLife's closure of its Overseas Operation on April 25, 1994. Except as provided in Section V of this Agreement, Category I Class Members will automatically receive Category I Relief, unless they elect exclusion from the Class.

13. "Category II Class Member" means any Class Member who, according to the Company's records, resided in the United States on the Valuation Date and who had an In Force Policy or Annuity as of December 31, 1999, that was purchased during the Class Period in one of the designated European nations. Included in the definition is any Class Member who, according to the Company's records, resided in the United States on the Valuation Date and who owned a Policy that was In Force on April 25, 1994, but subsequently lapsed due to non-payment of premiums, and pursuant to Section V of this Agreement the Class Member submits a written declaration made under penalty of perjury that premium payments were discontinued primarily because of (i) the alleged illegality of the sale of the Policy, or (ii) MetLife's closure of its Overseas Operation on April 25, 1994. Except as provided in Section V of this Agreement, Category II Class Members will automatically receive Category II Relief, unless they elect exclusion from the Class.

14. "Category III Class Member" means a Class Member regardless of residence, whose Policy or Annuity that was purchased during the Class Period in one of the designated European nations, Terminated prior to December 31, 1999, and who has not submitted a written declaration pursuant to Section V of this Agreement. Unless they elect exclusion from the Class, Category III Class Members are automatically eligible for relief, but must complete and return a Benefit Voucher, together with any required supporting documentation, to MetLife in order to receive the applicable SDB or ADB upon the Company's receipt of due proof of the qualifying death of the Measuring Life within the benefit period, as provided in this Agreement.

15. "Category I Relief" means the Restitution Credit to the Policy or Annuity of each Category I Class Member in an amount equal to the excess of the Restitution Value over the Surrender Value of the Policy or Annuity. In the event that the excess of the Restitution Value over the Surrender Value

of the Policy or Annuity is less than five hundred dollars ($500), Category I Relief shall be a Restitution Credit to the Policy or Annuity in the amount of five hundred dollars ($500).

16. "Category II Relief" means the Restitution Credit to the Policy or Annuity of each Category II Class member not to exceed twenty percent (20%) of the excess of the Restitution Value over the Surrender Value of the Policy or Annuity. In the event that twenty percent (20%) of the excess of the Restitution Value over the Surrender Value of the Policy of Annuity is less than two hundred dollars ($200), Category II Relief shall be a Restitution Credit to the Policy or Annuity in the amount of two hundred dollars ($200).

17. "Category III Relief" means a Settlement Death Benefit for Terminated Policies or an Accidental Death Benefit for Terminated Annuities.

18. "Class" or "Class Member" means all persons or entities who own or owned any Policy or any Annuity issued by the Company pursuant to an individual sale to: (i) persons who executed an application for a Policy or Annuity while in Switzerland, France, Italy, Spain, the Netherlands, Belgium, Norway and Greece during the period from January 1, 1957 through April 25, 1994; and (ii) persons who executed an application for a Policy or Annuity while in the United Kingdom during the period from January 1, 1967 through April 25, 1994. Notwithstanding the foregoing, the class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any persons or entities who make a timely election to be excluded from the proposed class with respect to a particular Policy (or Policies) or Annuity (or Annuities); and (ii) any persons or entities who have or had an ownership interest in a Policy or Annuity that (a) was terminated prior to the Execution Date due to the death of the insured, the annuity owner, or the annuitant; (b) was issued by the Company, but not accepted or paid for, or was returned to the Company as part of the exercise of a free look provision in the Policy or Annuity; or (c) was rescinded ($i$) as part of a reissue of a new Policy or Annuity; or ($ii$) because of a material misrepresentation on a Policy or Annuity application; (d) is an Annuity which, as of December 31, 1999, has annuitized or is paying out under the terms of the original annuity contract; or, (e) is the subject of a negotiated release (other than the negotiated release in *In re: Metropolitan Life Insurance Company Sales Practices Litigation*, Misc. Docket No. 96–179, M.D.L. No. 1091 (W.D.Pa.)) signed by any person or entity settling a claim or dispute and releasing Defendants from any further liability concerning such Policy or Annuity.

19. "Class Notice" means the legal notice of the terms of the proposed settlement included in the Class Notice Package and/or Publication Notice.

20. "Class Notice Package" means the notice package, as approved in form and content by Plaintiff's Counsel, Defendants' Counsel and the Court, and substantially in the form attached hereto as Exhibit A, to be provided to Class Members pursuant to subsection VI.B. of this Agreement. The Class Notice Package shall include (i) the Class Notice; (ii) an Information Statement; (iii) the Release; and (iv) a Benefit Voucher.

21. "Class Period" means (i) for all persons who executed an application for a Policy or Annuity while in Switzerland, France, Italy, Spain, the Netherlands, Belgium, Norway and Greece: the period from January 1, 1957 through April 25, 1994; (ii) for all persons who executed an application for a Policy or Annuity in the United Kingdom: the period from January 1, 1967 through April 25, 1994.

22. "Company" means Metropolitan Life Insurance Company, Metropolitan Insurance and Annuity Company, and Metropolitan Tower Life Insurance Company.

23. "Complaint" means the original Complaint in this Action filed by Plaintiff on December 8, 1995.

24. "Court" means the United States District Court for the Southern District of New York where the Action is pending.

25. "Default Measuring Life" means, with respect to any of the SDBs and ADBs provided in this Agreement, the insured under the Policy or the annuitant under the Annuity making the Class Member eligible for relief.

26. "Defendants" means Metropolitan Life Insurance Company, Metropolitan Insurance and Annuity Company, Metropolitan Tower Life Insurance Company, Harry Kamen, Ted Athanassiades, Roy C. Albertalli, Phillip Briggs, Larry Brewster, Anthony Cannatella, John J. Creedon, Robert J. Crimmins, Harold Leff, James Madera, Edmund Rakowski, Jeffrey G. Slane, George P. Slane, John D. McMahon, Stewart G. Nagler, Robert G. Schwartz, John H. Tweedie, Curtis H. Barnette, Joan Ganz Cooney, A. Luis Ferre, James R. Houghton, Helene Kaplan, George M. Keller, Richard J. Mahoney, Allen E. Murray, John J. Phelan, Jr., John B.M. Place, Hugh B. Price, William S. Sneath and John R. Stafford.[3]

27. "Defendants' Counsel" means the law firm of Skadden, Arps, Slate, Meagher & Flom LLP and the law firm of Proskauer Rose LLP.[4]

28. "Execution Date" means the date on which the Agreement has been executed by all of the undersigned.

29. "Fairness Hearing" means the hearing at or after which the Court will make a final decision whether to approve this Agreement as fair, reasonable and adequate.

30. "Final Order" means the Order finally certifying the Class for settlement purposes only and approving the settlement and this Agreement, and the judgment entered pursuant to that Order, as contemplated in Section X of this Agreement and substantially in the form attached hereto as Exhibit E hereto.

31. "Final Settlement Date" means the date on which the Final Order approving this Agreement becomes final. For purposes of this definition, the Final Order shall become final: (i) if no appeal is taken therefrom, on the date on which the time to appeal therefrom has expired; (ii) if any appeal is taken therefrom, on the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner resulting in an affirmance of the Final Order; or (iii) on a date after entry of the Final Order which date counsel for the Parties agree to in writing.

32. "In Force" means that a Policy or Annuity had not lapsed without value, matured, been surrendered, or otherwise Terminated without value, and had not ceased to provide coverage due to the death of the insured or the annuitant prior to December 31, 1999. In addition, for Annuities, the term "In Force" means that as of December 31, 1999, the Annuity had not begun to pay benefits pursuant to the terms of the original contract. The term "In Force" includes a Policy providing coverage under a reduced paid-up insurance non-forfeiture option or an extended term non-forfeiture option.

33. "Information Statement" means the insert to be included in the Class Notice Package, substantially in the form contained in Exhibit A, Appendix C, on which is printed the Class Member's name and address, the number of the Policy or Annuity that makes the Class Member eligible for relief, and the category of relief for which the Class Member is eligible.

34. "MDL Settlement" means the Stipulation of Settlement entered into on August 18, 1999, resolving *In re: Metropolitan Life Insurance Company Sales Practices Litigation,* Misc. Docket No. 96–179, M.D.L. No. 1091 (W.D.Pa.).

---

**3.** Plaintiff has withdrawn the claims asserted against M.S. Peress, Richard Maurer and Vito Vitone, who were originally named as defendants in this lawsuit. Edward Walsh was never served with the Summons and Complaint or with the Amended Complaint and therefore, although named as a defendant, was never a party to this action.

**4.** Proskauer Rose LLP represents Defendant Roy Albertalli; the law firm of Skadden, Arps, Slate, Meagher & Flom LLP represents all the other remaining Defendants in the Action.

35. "Measuring Life" means the person upon whose qualifying death the SDB or ADB provided for in this Agreement will be paid, which person shall be the Default Measuring Life, unless the Class Member designates an Alternate Measuring Life.

36. "Overseas Operation" means the Company's sales, marketing and servicing operation acting in the nine designated European nations during the Class Period.

37. "Parties" or "Party" means Plaintiff in her individual and representative capacities and/or Defendants collectively and, where applicable, their respective counsel.

38. "Payee" means the person to whom the applicable Settlement Death Benefit or Accidental Death Benefit under this Agreement shall be paid upon the Company's receipt of due proof of the death of the Measuring Life within the benefit period. This person shall be the person identified by the Class Member on the Benefit Voucher. In the event that the Payee is deceased or cannot be paid for any reason, the Company may pay the applicable SDB or ADB to any relative of the Class Member by blood or marriage appearing to the Company to be equitably entitled to such payment.

39. "Plaintiff" means Sally A. Dornberger in her individual and representative capacities.

40. "Plaintiff's Counsel" means the law firms of Conover & Zayas, LLP and Wechsler Harwood Halebian & Feffer LLP.

41. "Policy" or "Policies" means a life insurance policy or policies that the Company issued to a Class Member pursuant to an individual sale, the application for which was executed in one of the nine designated European nations during the Class Period.

42. "Policy Face Amount" means, for traditional policies, the initial face amount of the base policy, excluding any riders sold at issue. For variable or non-variable universal life policies, this term means the specified face amount of the policy, excluding any riders sold at issue.

43. "Preliminary Approval Order" means the Order to be entered by the Court concerning notice, administration and the date of the Fairness Hearing, as contemplated in Section IX of this Agreement and substantially in the form attached hereto as Exhibit C hereto.

44. "Producer" means any of the Company's employees, producers, account representatives, sales representatives, sales agents, general agents, branch managers, brokers or solicitors, and any other person who engages or has engaged in the sale or distribution of the Company's products.

45. "Publication Notice" means the published summary of the Class Notice together with the Benefit Voucher, including notice of the proposed settlement, the date of the Fairness Hearing and the Class Members' exclusion, objection and appeal rights, as approved in form and content by the Court, as contemplated in Section VI.C. of this Agreement and substantially in the form attached hereto as Exhibit B.

46. "Reinstatement Payment" means the amount a policyholder would be required to pay to the Company as of the "monthiversary" (the day of the month on which the policy or annuity was issued) immediately prior to the Valuation Date were the Terminated Policy to be reinstated.

47. "Reinstatement Surrender Value" means the Surrender Value that the Policy would have had as of the "monthiversary" (day of the month on which the policy or annuity was issued immediately prior to the Valuation Date assuming that the Policy were to be reinstated at that time.)

48. "Release" means the release and waiver set forth in Section VII of this Agreement.

49. "Released Transactions" means any and all claims arising out of, or concerning the facts, subjects or matters alleged in the Complaint or in the Amended Complaint, including but not limited to, the marketing, solicitation, application, execution, underwriting, issuing, pricing, charges, rates, acceptance, sale, purchase, operation, retention, administration, servicing, or performance of the Policies or Annuities solicited, purchased, .or sold in Spain, France, Italy, Greece, Norway, Belgium, Switzerland, the Netherlands,

or the United Kingdom during the Class Period.

50. "Releasees" means Defendants and each of their past, present and future parents (including intermediate and ultimate parents), subsidiaries, affiliates, predecessors, successors and assigns, and each of their past, present and future officers, directors, employees, general agents, agents, branch managers, Producers, sales representatives, brokers, solicitors, representatives, attorneys, spouses, heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, including any person or entity acting on behalf or at the direction of any of them.

51. "Restitution Credit" means the credit that will be applied to the Policy or Annuity under Category I and II Relief. With respect to Category I Relief, the Restitution Credit is the excess of the Restitution Value over the Surrender Value, but not less than five hundred dollars ($500.00). With respect to Category II Relief, the Restitution Credit is twenty percent (20%) of the excess of the Restitution Value over the Surrender Value, but not less than two hundred dollars ($200.00).

52. "Restitution Value" means: (i) for Policies, the amount of the total premiums paid to the Company *minus* the total dividends received in cash, used to pay premiums or used to purchase one year term insurance, *minus* the cost of insurance (utilizing an agreed upon blending and grading of insurance rates to approximate the actual cost of insurance) *minus* any withdrawals, *all with* interest compounded at six percent (6%) per annum *minus* any outstanding loan balance; (ii) for Annuities, the amount of the total payments paid to the Company *minus* withdrawals, *all with* interest compounded at six percent (6%) per annum *minus* any outstanding loan balance. All values have been determined as of the Valuation Date.

53. "Settlement Death Benefit" or "SDB" means the form of relief available to Class Members who had an ownership interest in a Policy or Policies issued by the Company that Terminated prior to December 31, 1999.

54. "Simplified Underwriting" means the underwriting requirements set forth in Exhibit G hereto.

55. "Surrender Value" means the surrender value as defined in the terms of the Policy or Annuity. All surrender values are calculated as of the Valuation Date.

56. "Terminated" means that a Policy or Annuity has lapsed without value, matured, been surrendered, or otherwise terminated without value and has not been reinstated, including any Annuity that has begun to pay benefits pursuant to the terms of the original contract.

57. "Valuation Date" means July 14, 2000, the date as of which the Restitution Values and Surrender Values were computed.

### III.  *SETTLEMENT RELIEF*

A. *Introduction*

1. Pursuant to this Agreement, Class Members shall have an opportunity to receive one of three alternative types of relief: Category I, Category II or Category III Relief. A Class Member is eligible for relief with respect to each Policy or Annuity making him or her a Class Member.

2. Notwithstanding any other provision of this Agreement, where more than one person or entity has a current or prior ownership interest in a Policy or Annuity, all Class Members having such an interest in the Policy or Annuity shall be presumed to be acting jointly in exercising any right and receiving any benefit created under this Agreement (including all exhibits hereto) with respect to that Policy or Annuity; *provided, however,* that if any one such person or entity excludes himself or herself from the Class with respect to a Policy or Annuity, all such Class Members having a current or prior ownership interest in that Policy or Annuity will be deemed to be excluded with respect to that Policy or Annuity. There shall be only one award of relief for each Policy or Annuity, regardless of the number of Class Members with current or prior ownership interests therein.

3. If the Company determines that any particular form of relief provided under this

Agreement is not available to a particular Policy or Annuity or could cause adverse consequences to the Class Member or to his or her Policy or Annuity, the Company may, in its sole discretion, provide the cash equivalent of any such relief.

### B. *Category I Relief*

1. Except as provided in subsections IV.C. and V.G. of this Agreement, all Category I Class Members shall receive a Restitution Credit to the Policy or Annuity in an amount equal to the excess of the Restitution Value over the Surrender Value of the Policy or Annuity.

2. In the event that the excess of the Restitution Value over the Surrender Value of the Policy or Annuity is less than five hundred dollars ($500), the Category I Class Member shall automatically receive a Restitution Credit to the Policy or Annuity in the amount of five hundred dollars ($500).

3. Category I Relief shall be fully distributed within seventy-five (75) days of the Final Settlement Date.

4. The aggregate value of Category I Relief combined with Category II Relief shall not exceed thirteen million dollars ($13,000,-000) and is subject to the provisions of Section IV.

### C. *Category II Relief*

1. Except as provided in subsections IV.C. and V.G. of this Agreement, all Category II Class Members shall receive a Restitution Credit to the Policy or Annuity not to exceed twenty percent (20%) of the excess of the Restitution Value over the Surrender Value of the Policy or Annuity.

2. In the event that twenty percent (20%) of the excess of the Restitution Value over the Surrender Value of the Policy of Annuity is less than two hundred dollars ($200), the Category II Class Member shall automatically receive a Restitution Credit to the Policy or Annuity in the amount of two hundred dollars ($200).

3. Category II Relief shall be fully distributed within seventy-five (75) days of the Final Settlement Date.

4. The aggregate value of Category II Relief combined with Category I Relief shall not exceed thirteen million dollars ($13,000,-000) and is subject to the provisions of Section IV.

### D. *Category III Relief*

Category III Class Members shall be eligible for relief in the form of an SDB for Terminated Policies or an ADB for Terminated Annuities. The SDBs and ADBs provided for in Category III will not cost Met-Life more than three million dollars ($3,000,000) in the aggregate, which would provide an estimated value of seven million, eight hundred thousand dollars ($7,800,000), based on a comparison of average insurance company rates as offered in the open market.

#### 1. *Settlement Death Benefit*

a. Category III Class Members who owned a Policy making the Class Member eligible to receive Category III Relief shall be automatically entitled to a SDB. In order to obtain the SDB, Category III Class Members must complete and return to MetLife a Benefit Voucher, together with any supporting documentation setting forth: (i) the Policy owner's name, address, signature, and the nation in which the application for the Policy was signed; (ii) the Policy number that makes the Category III Class Member eligible for Category III Relief; and (iii) the Payee's name, address, social security number and date of birth. In the event that the Default Measuring Life has deceased before thirty days after the Final Settlement Date, the Class Member or his or her estate must designate a member of the Class Member's Affinity Group as an Alternate Measuring Life for purposes of the SDB. Failure to complete and return a Benefit Voucher with the proper documentation within thirty (30) days after the Fairness Hearing will result in the waiver of relief under the Settlement. Simplified Underwriting will apply to the Alternate Measuring Life. If the proposed Alternate Measuring Life satisfies the Simplified Underwriting requirements, Settlement Death Benefit coverage for the pro-

posed Alternate Measuring Life shall begin upon satisfactory completion of the necessary underwriting. If the proposed Alternate Measuring Life is uninsurable, then the Class Member or his or her estate must designate a different member of the Affinity Group as a proposed Alternate Measuring Life, who will be subject to Simplified Underwriting.

b. The SDB shall commence thirty (30) days after the Final Settlement Date.

c. For each Policy making the Category III Class Member eligible for Category III Relief, the SDB shall provide for a period of up to fifty-nine (59) months, a payment to the Payee upon the Company's receipt of due proof of the death of the Measuring Life within the SDB period.

d. The amount and duration of the SDB that an eligible Category III Class Member may receive for each eligible Policy will depend on (i) the age of the Measuring Life under the SDB as of the Final Settlement Date; and (ii) the Policy Face Amount at the issue date set forth on the Policy, as set forth below:

| SDB Measuring Life's Age | SDB Length | Percentage of Policy Face Amount |
|---|---|---|
| 30 or Younger | 59 months | 16.6% |
| 31–40 | 4 years | 16.6% |
| 41–50 | 3 years | 12.5% |
| 51–60 | 3 years | 8.3% |
| 61 or Older | 2 years | 8.3% |

### 2. *Accidental Death Benefit*

a. Category III Class Members who owned an Annuity making the Class Member eligible to receive Category III Relief shall be automatically entitled to an ADB. In order to obtain the ADB, Category III Class Members must complete and return to MetLife a Benefit Voucher, together with the required supporting documentation setting forth: (i) the Annuity owner's name and address; (ii) the Annuity number that makes the Category III Class Member eligible for Category III Relief; (iii) the Payee's name, address, social security number and date of birth. In the event that the Default Measuring Life deceased before thirty days after the Final Settlement Date, the Class Member or his or her estate must designate a member of the Class Member's Affinity Group as an Alternate Measuring Life for purposes of the ADB. Failure to complete and return a Benefit Voucher with the proper documentation within thirty (30) days after the Fairness Hearing will result in the waiver of relief under the Settlement.

b. The ADB shall commence thirty (30) days after the Final Settlement Date.

c. For each Annuity making the Category III Class Member eligible for Category III Relief, the ADB shall provide for a period of three years, a payment to the Payee upon the Company's receipt of due proof of the accidental death of the Measuring Life within the ADB period.

d. The amount and duration of the ADB that an eligible Category III Class Member may receive for each eligible Annuity shall be based on the Annuity Account Value, as set forth below:

| Annuity Account Value | ADB Length | ADB Amount |
|---|---|---|
| Up to $10,000 | 3 years | $1,500 |
| $10,001–$25,000 | 3 years | $2,250 |
| $25,001–$50,000 | 3 years | $3,000 |
| $50,001–$100,000 | 3 years | $4,000 |
| Over $100,000 | 3 years | $5,500 |

## IV. DISTRIBUTION OF RELIEF

### A. Category I and II Relief

1. In the event that the aggregate value of the settlement relief provided to Class Members in Categories I and II is less than thirteen million dollars ($13,000,000), the remainder will be distributed pro-rata among Category I and II Class Members based on the amount of each Class Member's Restitution Credit.

2. In the event that the aggregate value of the settlement relief to be provided to Class Members receiving Category I and II Relief would exceed thirteen million dollars ($13,000,000), the relief to be awarded to each recipient of Category I Relief and Category II Relief will be reduced on a pro-rata basis based on the amount of each Class Member's Restitution Credit.

3. Subject to the provisions of subsections IV.A.1. and IV.A.2., in the event that a death benefit due under a Class Member's Policy is paid before the applicable Restitution Credit is applied to the Policy, the Company will pay the beneficiary under the Policy, as a supplemental death benefit, an amount equal to the amount of additional insurance that would have been provided under the Class Member's Policy if the Restitution Credit had been used to purchase additional insurance under the Policy.

4. Subject to the provisions of subsections IV.A.1. and IV.A.2., in the event that a death benefit due under a Class Member's Annuity is paid before the applicable Restitution Credit is applied to the Annuity, the Company will pay the beneficiary of the Annuity the amount of the Restitution Credit as a supplemental death benefit.

### B. Category III Relief.

In the event that the estimated aggregate cost of Category III Relief were to exceed three million dollars ($3,000,000), the Category III relief awarded each Class Member would be reduced on a pro rata basis.

### C. Guidelines to Apply When Relief is Available Under the MDL Settlement.

The following guidelines apply where Policies or Annuities are eligible for relief under both this settlement and under the MDL Settlement: (i) an award of General Relief or DAC Tax Relief as those terms are defined in the MDL Settlement may be taken in addition to any relief afforded under this settlement; and (ii) an award of Claim Evaluation under the MDL Settlement may be taken in addition to any relief afforded under this settlement, with the limitation that the total relief awarded under both the MDL Settlement and under this settlement shall not exceed the Restitution Value, but in no event shall a Class Member receive less than two hundred dollars ($200) under this settlement.

## V. GUIDELINES FOR CATEGORY III CLASS MEMBERS FOR APPLYING FOR CATEGORY I OR CATEGORY II CLASS MEMBERSHIP

A. Category III Class Members who resided outside of the United States on the Valuation Date and who had an In Force Policy on April 25, 1994 that subsequently lapsed due to non-payment of premiums are eligible to become Category I Class Members.

B. Category III Class Members who resided in the United States on the Valuation Date and who had an In Force Policy on April 25, 1994 that subsequently lapsed due to non-payment of premiums are eligible to become Category II Class Members.

C. In order to become a Category I or Category II Class Member, the Category III Class Member must submit a declaration made under penalty of perjury, pursuant to 28 U.S.C. § 1746, together with any supporting documentation that the Class Member desires to submit, setting forth the Class Member's place of residence as of the Valuation Date and declaring that he or she discontinued premium payments on the Policy that lapsed subsequent to April 25, 1994 primarily because of (a) the alleged illegality of the sale of the lapsed Policy, or (b) MetLife's closure of its Overseas Operation on April 25, 1994.

D. No later than thirty (30) days prior to the Fairness Hearing, the declaration and any supporting documentation that the Class Member desires to submit, must be mailed by first-class mail (or the local equivalent) or

consigned to an overnight carrier for delivery to the Administrator.

E. Upon timely receipt of the Category III Class Member's properly completed and executed declaration, the Class Member will become a Category I or Category II Class Member, as appropriate.

F. If the Administrator, in consultation with the Parties' Counsel, determines that the declaration is not properly completed or is untimely, the Class Member is not entitled to become a Category I or II Class Member, but will remain a Category III Class Member and will still be eligible to receive Category III Relief for the lapsed Policy.

G. Category III Class Members who become Category I or Category II Class Members pursuant to this Section V are entitled to modified Category I or Category II Relief as follows:

1. Subject to the provisions of Section IV, Category I Class Members will receive a payment equal to the excess, if any, of Category I Relief plus the Reinstatement Surrender Value, over the Reinstatement Payment. In no event shall the payment under this provision be greater than the applicable Category I Relief. Class Members are not required to reinstate the Policy to obtain this relief.

2. Subject to the provisions of Section IV, Category II Class Members will receive the excess, if any, of Category II Relief plus the Reinstatement Surrender Value, over the Reinstatement Payment. In no event shall the payment under this provision be greater than the applicable Category II Relief. Class Members are not required to reinstate the Policy to obtain this relief.

## VI. *NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS*

A. *Introduction.* The Company, at its own expense, will provide notice of the proposed settlement by first class mail and by publication in specified newspapers, as set forth below.

B. *Class Notice Package.* Subject to the requirements of the Preliminary Approval Order and no later than ninety (90) days before the Fairness Hearing, the Company shall send a Class Notice Package by first-class mail, postage prepaid, to the last known address, as reflected by the Company's records, of the current or last owner(s) of record of Policies and Annuities eligible for Category I and II Relief. The Company shall pay for the costs associated with producing and mailing the Class Notice Package.

1. *Class Notice.* Each Class Notice Package shall contain a Court-approved Class Notice. The proposed Class Notice, agreed upon by the Parties, will be substantially in the form included in Exhibit A. The Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of Court and any other applicable law, and shall otherwise be in the manner and form agreed upon by the Parties and approved by the Court. It shall include the following three topics:

a. *General Terms.* The Class Notice shall contain a plain and concise description of the Action, the Class certification and the proposed settlement, including a description of who qualifies as a Class Member and how the proposed settlement would operate to provide relief to individual Class Members.

b. *Notice of Exclusion and Objection Rights.* The Class Notice shall inform Class Members of the deadlines and procedures for excluding themselves from the Class, objecting to the proposed settlement, or remaining in the Class, as well as the legal effects of exercising each of these options.

c. *Notice of Fees and Expenses.* The Class Notice shall provide information about the amounts being sought by Plaintiff's Counsel as Attorneys' Fees and Expenses. It also shall explain that the Company will pay the fees and expenses awarded by the Court to Plaintiff's Counsel and that such fees and expenses will not be paid out of funds designated for relief to Policy and Annuity owners under this settlement. The Class Notice also shall explain that, under the settlement, individual Class Members are

responsible for any fees and expenses of any counsel they may retain or have retained to represent them individually for any reason, including, but not limited to, counsel retained in connection with the Fairness Hearing. In addition, the Class Notice shall explain that Plaintiff's Counsel may petition the Court for incentive awards for certain plaintiffs, not to exceed ten thousand dollars ($10,000) to Plaintiff, Sally Dornberger, and one thousand, five hundred dollars ($1,500) to be paid to Class Members Joseph Anthony Miro, Franklin Craig, Frank Azevedo, Carlos Rodriguez–Del Valle, Athanasios Vellianitis, Paul Zahn, Massimo Corona and David Vargas as compensation for the risk and expense they have undertaken on behalf of the Class. It also shall state that any such incentive awards shall be paid solely from funds allocated and designated to Categories I and II, and under no circumstances shall MetLife or the other Defendants be responsible for paying such incentive awards from their own funds.

2. *Release.* Each Class Notice shall have, as an appendix, a copy of the Release in a form substantially similar to the Release included as Exhibit A, Appendix A.

3. *Benefit Voucher.* Each Class Notice shall have, as an appendix, a copy of the Benefit Voucher in a form substantially similar to the Benefit Voucher included as Exhibit A, Appendix B.

4. *Information Statement.* Each Class Notice shall include an Information Statement in a form substantially similar to the one included as Exhibit A, Appendix C.

C. *Publication Notice.* Subject to the requirements of the Preliminary Approval Order and no later than ninety (90) days before the Fairness Hearing, the Company shall publish the Publication Notice, in a form substantially similar to that attached as Exhibit B, once in the National and International editions of *The Herald Tribune* and *The Wall Street Journal.* The Company shall pay for the costs associated with publishing the Publication Notice.

1. *Benefit Voucher.* The Publication Notice shall include a Benefit Voucher, in a form substantially similar to the one included as Exhibit F, that sets forth the information and documentation that Category III Class Members must supply in order to obtain coverage under an SDB or ADB.

2. *Application for Category I or II Relief.* The Publication Notice shall set forth the information and documentation required from Category III Class Members who wish to become Category I or Category II Class Members pursuant to Section V of this Agreement.

D. *Right of Communication with Claimants and Company Customers.* The Parties agree that the Company retains its right to communicate with and respond to inquiries, including general inquiries concerning the settlement, from present and former Company customers, including policy and annuity owners and Class Members, orally and/or in writing, and it may do so through its Producers or other appropriate personnel. However, the Company will inform Class Members that specific inquiries regarding the terms of the settlement may be addressed to the Administrator.

E. *Retention of Administrator.* Upon consultation and approval with Plaintiff's Counsel, the Company shall, at its cost, retain one or more Administrators to help implement the terms of the proposed settlement.

1. The Administrator(s) may assist with various administrative tasks, including, without limitation, (i) mailing or arranging for the mailing of the Class Notice to Class Members, (ii) arranging for publication of the Publication Notice, (iii) handling returned mail not delivered to Class Members, (iv) making any additional mailings required under the terms of this Agreement, (v) answering written inquiries from Class Members and/or forwarding such inquiries to Plaintiff's Counsel or their designee, (vi) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion from the settlement, (vii) handling Benefit Vouchers and applications for Category I or II Relief mailed by Class Members in response to the Class Notice, (viii) formulating and maintaining a database of all responses from Class Members, and

(ix) otherwise assisting the Company with administration of the settlement. The Company shall pay the reasonable fees and expenses of the Administrator(s), as well as any other fees and expenses incurred in performing all of the tasks described in this section. Plaintiff's Counsel and/or their designee shall be entitled to observe and monitor the performance of the Administrator.

2. The contract between the Company and the Administrator shall obligate the Administrator to abide by the following performance standards:

a. The Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and neutrally describe, the provisions of this Agreement in communications with Class Members;

b. The Administrator shall provide prompt, accurate and neutral responses to inquiries from Plaintiff's Counsel or their designee, Defendants and/or Defendants' Counsel.

c. If, in the course of any communication with a Class Member, the Class Member requests that the Administrator and/or its agent or employee refer the communication to the Company or Plaintiff's Counsel, then the Administrator and/or its agent or employee shall promptly fulfill such request.

3. If the Administrator makes a material misrepresentation to, or fraudulently conceals requested material information from, Plaintiff's Counsel or Defendants' Counsel, then the Party to whom the misrepresentation is made (or, in the case of a concealment, the requestor of the information) shall have the right to demand that the Administrator immediately be replaced. If the Administrator fails to perform adequately on behalf of the Company and the Class, the Parties can agree to remove or replace the Administrator. All disputes regarding the retention or dismissal of the Administrator shall be resolved by the Court.

F. *Media Communications.* In the event an initial written statement, press release or other media notice is issued in connection with the proposed settlement on or after the Execution Date, the Parties agree that the form and content shall be mutually acceptable to the Parties. If an initial joint written statement, press release or media notice is issued, then any subsequent formal written statements, written press releases or other written media notices to be issued in connection with the proposed settlement shall be exchanged by the Parties sufficiently in advance of public release to provide the other Party with adequate time to prepare its own statement. Plaintiff's Counsel and the Company shall ensure that any comments about or descriptions of the proposed settlement or its value or cost in the media or in any other public forum are balanced, fair and accurate.

## VII. *RELEASE AND WAIVER AND ORDER OF DISMISSAL*

Plaintiff hereby agrees and acknowledges that the provisions of this Release, individually and collectively, constitute an essential and material term of the Settlement Agreement.

A. *Release and Waiver.* The following release and waiver shall take effect upon entry of the Final Order:

1. Plaintiff and all Class Members hereby expressly agree that they release, acquit and forever discharge all Releasees from and shall not now or hereafter institute, participate in, maintain, maintain a right to or assert against the Releasees, either directly or indirectly, on their own behalf, derivatively, or on behalf of the Class or of any other person or entity, any and all causes of action, claims, damages, awards, equitable, legal and administrative relief, interest, demands or rights, *including, without limitation,* claims for rescission, restitution or all damages of any kind, including those in excess of actual damages, and claims for mental anguish, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source of law of the United States or any other country or jurisdiction, that have been, could have been, may be or could be alleged or asserted by Plaintiff or any Class Member against the Releasees or any of them in this Action or in any other court action or before any administrative

body (including any brought by or on behalf of any state attorney general or Department of Insurance or other regulatory entity or federal, state or local prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions, *including, without limitation:*

a. any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations that have been, could have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in the Complaint, Amended Complaint, or the Action;

b. any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Released Transactions;

c. any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiff's Counsel, Class Members, and/or any individual Class Member in this Action, or by Plaintiff or the Class Members in this Action, or any of them, in connection with or related in any manner to the Action, the settlement of the Action, the administration of such settlement and/or the Released Transactions except to the extent otherwise specified in the Settlement Agreement.

2. Nothing in this Release shall be deemed to alter (i) a Class Member's contractual rights (except to the extent that such rights are altered or affected by the election and award of benefits under the Settlement Agreement) to make a claim for contractual benefits that may become payable in the future pursuant to the express written terms of the Policy or Annuity issued by the Company; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances arising after the Execution Date; (iii) the status of claims released pursuant to the nationwide class action settlement in *Horton v. Metropolitan Life Insurance Company,* Civ. No. 93-1849-

CIV-T-23A (M.D.Fla.); (iv) the status of claims released pursuant to the nationwide class action settlement in *In re: Metropolitan Life Insurance Company Sales Practices Litigation,* Misc. Docket No. 96-179, MDL No. 1091 (W.D.Pa.)

3. Plaintiff and all Class Members expressly agree that this Release will be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed by the release of the Releasees.

4. In connection with this Release, Plaintiff and the Class Members acknowledge that they are expressly aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the Released Transactions occurring or arising before the Execution Date. Nevertheless, it is the intention of Plaintiff and the Class Members in executing this Release fully, finally and forever to settle and release all such matters, except as set forth in subsection VII.A.2. To the extent that there exist principles of law which would not permit this Release to extend to claims that are presently unknown or unsuspected—notwithstanding that the Parties have chosen New York law to govern the Settlement Agreement—Plaintiff and the Class Members hereby agree that these principles of law are hereby knowingly and voluntarily waived and relinquished by Plaintiff and the Class Members. Plaintiff and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

5. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the United States District Court for the Southern District of New York.

6. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability by any of the Defendants.

B. *Order of Dismissal.* The Parties shall seek and obtain from the Court a Final Order as further described below in Section X.

The Final Order shall, among other things, (i) approve this Settlement Agreement as fair, reasonable and adequate, (ii) dismiss the Action with prejudice, and (iii) incorporate the terms of the Release.

## VIII. *ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS*

A. Plaintiff's Counsel intend to make, and Defendants agree not to oppose, an application for an award of Attorneys' Fees and Expenses not to exceed five million, one hundred thousand dollars ($5,100,000) which shall be the sole aggregate compensation for all attorneys representing the Class. MetLife shall pay the Court-awarded amount of Attorneys' Fees and Expenses from its own funds, and not from any monies set aside pursuant to this Agreement for compensation of Class Members. Plaintiff's Counsel, in their sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among all of the counsel who have acted on behalf of the Class herein.

1. The Company will deposit the amount awarded by the Court for Attorneys' Fees and Expenses in an interest-bearing escrow account, with Skadden, Arps, Slate, Meagher & Flom LLP, as escrowee, within ten (10) days of the Court's entry of a Final Order. All of the principal and interest accrued on the funds in this account shall be transferred by the escrowee to Plaintiff's Counsel within ten (10) days of the Final Settlement Date, by check made payable to Wechsler Harwood Halebian & Feffer LLP and Conover & Zayas, LLP.

2. If the Final Order is reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance of the Final Order (other than on the issue of attorneys' fees), or if Defendants, Defendants' Counsel or Plaintiff's Counsel properly and timely terminate this Agreement in accordance with the terms set forth therein, then the Company's and/or the escrowee's obligation to transfer the funds to Plaintiff's Counsel shall be void. In the event the escrowee's obligation to transfer

the funds to Plaintiff's Counsel becomes void under this provision, the escrowee shall return any funds deposited by the Company, and any interest accumulated in the escrow account to the Company within ten (10) days of the event voiding the escrowee's obligation to transfer the funds to Plaintiff's Counsel.

3. If the award of Attorneys' Fees and Expenses is reduced after entry of the Final Order, then escrowee shall transfer the award of attorneys' fees and expenses, less the reduction, and the pro-rata share of the interest accumulated in the escrow account to Plaintiff's Counsel within ten (10) days of the Final Settlement Date, by check made payable to Wechsler Harwood Halebian & Feffer LLP and Conover & Zayas, LLP. The escrowee shall return the amount by which the award was reduced and the pro-rata share of the interest accumulated in the escrow account to the Company within ten (10) days of the Final Settlement Date.

B. Plaintiff's Counsel may petition the Court for incentive awards of up to ten thousand dollars ($10,000) for Plaintiff Sally Dornberger and up to one thousand, five hundred dollars ($1,500) to be paid to Class Members Joseph Anthony Miro, Franklin Craig, Frank Azevedo, Carlos Rodriguez–Del Valle, Athanasios Vellianitis, Paul Zahn, Massimo Corona and David Vargas who have contributed time and/or resources to this Action. The purpose of such awards, if any, shall be to compensate the Class Members for efforts and risks taken by them on behalf of the Class. Any incentive awards made by the Court shall be paid solely from the funds allocated to Category I and II Relief, and under no circumstances shall the Company be responsible for paying such an incentive award from its own funds.

C. Neither the Defendants nor any of their past, present and future parents (including intermediate and ultimate parents), subsidiaries, affiliates, predecessors, successors and assigns, nor any of their respective past, present and future officers, directors, employees, general agents, agents, branch managers, producers, sales representatives, brokers, solicitors, representatives, attorneys, heirs, administrators, executors, insurers, predecessors, successors and assigns, or

any of them, shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of, any person, either directly or indirectly, in connection with this Action, this Settlement Agreement, or the proposed settlement, other than as expressly provided for in this Settlement Agreement.

## IX. ORDER OF PRELIMINARY APPROVAL, NOTICE TO THE CLASS, FAIRNESS HEARING, AND ADMINISTRATION

A. The Parties have negotiated, drafted and/or agreed to the content and form of the following documents: the Class Notice Package (Exhibit A); the Publication Notice (Exhibit B); the proposed Preliminary Approval Order (Exhibit C); the Confidentiality Agreement (Exhibit D); the proposed Final Order (Exhibit E); the Benefit Voucher (Exhibit F); and the Simplified Underwriting (Exhibit G). These documents are incorporated into, are an integral part of, and are material terms of this Agreement.

B. No later than April 30, 2001 the Parties shall submit this Agreement, including all attached exhibits, to the Court and seek preliminary approval thereof. If the Court preliminarily approves the settlement, the Parties shall move the Court to set a Fairness Hearing, and shall proffer the proposed Preliminary Approval Order (Exhibit C).

C. No named plaintiff or individual class member designated by name in this Agreement shall request exclusion from the Class, object to the proposed settlement, or file an appeal from or otherwise seek review of any order approving the proposed settlement.

## X. FINAL APPROVAL AND FINAL ORDER

The Parties shall petition the Court for a Final Order, substantially in the form attached hereto as Exhibit E.

## XI. MODIFICATION OR TERMINATION OF THIS AGREEMENT

A. The terms and provisions of this Agreement may be amended, modified or expanded only by agreement of the Parties and approval of the Court; *provided, however, that* after entry of the Final Order the Parties may, by written agreement, effect such amendments, modifications or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or notice to or approval by the Court if such changes are consistent with the Court's Final Order and do not limit the rights of Class Members under this Agreement.

B. The Company, in consultation with Plaintiff's Counsel and without approval of the Court, may implement the terms of the settlement after entry of the Final Order but before the Final Settlement Date, in which case all provisions in this Agreement that specify actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date on which the Company elects to implement the Settlement.

C. This Agreement shall terminate at the sole option and discretion of Defendants or Plaintiff if: (i) the Court, or any appellate court(s), rejects, modifies or denies approval of any portion of this Agreement or the proposed settlement, other than an award of attorneys' fees or an incentive award, that the terminating Party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings of the Court, the provisions relating to notice, the definition of the Class and/or the terms of the Release; (ii) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands any portion of the Final Order as proposed by Defendants' Counsel and Plaintiff's Counsel, that the terminating Party in its (or their) sole judgment and discretion believe(s) is material; or (iii) any of the conditions set forth in the letter agreement dated April 17, 2001 are met. The terminating Party must exercise the option to withdraw from and terminate this Agreement, as provided in this subsection, no later than twenty (20) days after receiving notice of the event prompting the termination.

D. Notwithstanding the preceding subsection, Plaintiff may not terminate this Agreement solely because of the amount or distribution of Attorneys' Fees and Expenses awarded by the Court or any appellate court(s).

E. If an option to withdraw from and terminate this Agreement arises under any of the subsections to this Section XI, (i) neither Defendants nor Plaintiff will be required for any reason or under any circumstance to exercise that option, and (ii) any exercise of that option shall be made in good faith.

F. If this Agreement is terminated pursuant to any of the subsections above, then:

1. This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for (i) the terms of this Section XI, which include the obligation of Plaintiff's Counsel to return any funds paid to them by the Company for Attorneys' Fees and Expenses; (ii) the terms of subsection XII.B. regarding the preservation of the confidentiality of the Agreement and the settlement negotiations; and (iii) the terms of subsection XII.K. regarding the inadmissibility of this Agreement as evidence in any proceeding.

2. This Agreement, all of its provisions, and all negotiations, statements and proceedings relating to it shall be without prejudice to the rights of the Defendants, Plaintiff or any other Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

3. Defendants and their current and former directors, officers, Producers, employees, agents, attorneys and representatives expressly and affirmatively reserve all defenses, arguments and motions as to all claims that have been or might later be asserted in the Action, including, without limitation, any applicable statutes of limitation, statutes of repose, or other prescription period and the argument that the Action may not be litigated as a class action;

4. Plaintiff and her current and former predecessors, successors, heirs, agents or assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action, including (without limitation) any argument concerning class certification and/or punitive damages;

5. Neither this Agreement, nor the fact of its having been made, shall be admissible or entered into evidence for any purpose whatsoever; and

6. Any order or judgment entered after the date of this Agreement shall be deemed vacated and will be without any force or effect.

## XII. GENERAL MATTERS AND RESERVATIONS

A. The obligation of the Parties to conclude the proposed settlement is contingent upon each of the following:

1. Acceptance of this Agreement by the Company's Boards of Directors;

2. The absence of any other policy or annuity owner demands or actions that arise out of or relate to the Released Transactions that would materially impair the benefits to the Releasees provided for by the Release, but that would not be terminated or otherwise resolved by this Agreement;

3. The resolution of any regulatory proceedings arising out of, or relating to the relief to be provided under, the proposed settlement; and

4. Entry by the Court of the Final Order approving the settlement, from which order the time to appeal has expired or which has remained unmodified after any appeal(s).

B. The Parties and their counsel agree to keep the existence and contents of this Agreement and all related negotiations confidential until the date of the first public announcement by the Company; *provided, however,* that this subsection shall not prevent earlier disclosure of such information:

1. To government regulators to whom the Company must report in order to satisfy the regulatory responsibilities of the Company; or

2. To rating agencies, financial analysts, Producers, or any other person or entity (such as experts, courts, and/or Administrators) to whom the Parties agree disclosure must be made to effectuate the terms and conditions of this Agreement.

C. Ninety (90) days after the Final Settlement Date (unless the time is extended by agreement of the Parties), Plaintiff and her counsel shall destroy, and mail to Defendants' Counsel a letter confirming the destruction of all documents (and all copies of such documents in whatever form made or maintained) produced by Defendants in this Action, *provided, however*, that this subsection shall not apply to any documents made part of a Court filing, or to Plaintiff's Counsel's work product.

D. The Company's execution of this Agreement shall not be construed to release—and the Company expressly does not intend to release—any claim the Company may make against any insurer for any cost or expense incurred in connection with this settlement, including attorneys' fees and costs.

E. This Agreement, complete with the exhibits attached hereto, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and may not be altered, amended, or modified except by written instrument executed by Plaintiff's Counsel and Defendants' Counsel. This Agreement, including its exhibits, supersedes any prior agreement, understanding, or undertaking (written or oral) by and between the Parties regarding the subject matter of this Agreement.

F. This Agreement and any ancillary agreements shall be governed by and interpreted according to the law of the State of New York, excluding its conflict of laws provisions.

G. Any action to enforce this Agreement shall be commenced and maintained only in this Court. The Court shall retain jurisdiction over the implementation, administration and conduct of the settlement and the interpretation, construction and enforcement of this Agreement.

H. Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding Sunday) express delivery service as follows:

1. If to Defendants, then to all of the following:

Sheila L. Birnbaum, Esq.
Irene A. Sullivan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735–3000
Facsimile: (212) 735–2000
Allen I. Fagin, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York 10036
Telephone: (212) 969–3000
Facsimile: (212) 969–2900

Mitchell Elberg, Esq.
Metropolitan Life Insurance Company
Law Department
One Madison Avenue
New York, New York 10010
Telephone: (212) 578–7697
Facsimile: (212) 251–1553

2. If to Plaintiff, then to all of the following:

Bradford D. Conover, Esq.
Conover & Zayas, LLP
445 Park Avenue
20th Floor
New York, N.Y. 10022
Telephone: (212) 223–3030

Daniella Quitt, Esq.
Wechsler Harwood Halebian & Feffer LLP
488 Madison Avenue
New York, N.Y. 10022
Telephone: (212) 935–7400
Facsimile: (212) 753–3630

Facsimile: (212) 593–7157

I. The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

J. All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence shall be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Agreement was made or executed.

K. In no event shall the Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in this Action, any other action, or any judicial, administrative, regulatory or other proceeding, except a proceeding to enforce this Agreement. Without limiting the foregoing, neither this Agreement, nor any related negotiations, statements or court proceedings, shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including but not limited to Defendants, or as a waiver by Defendants of any applicable defense, including without limitation any applicable statute of limitations or statute of frauds, or as a waiver by Plaintiff or the Class of any claims, causes of action or remedies, including punitive damages.

L. Except as expressly provided in this Agreement, neither this Agreement nor any of the relief to be offered under the proposed settlement shall be interpreted to alter in any way the contractual terms of any Policy or Annuity, or to constitute a novation of any Policy or Annuity.

M. No opinion concerning the tax consequences of the proposed settlement to individual Class Members is being given or will be given by the Company, Defendants' Counsel or Plaintiff's Counsel; nor is any representation or warranty in this regard made by virtue of this Agreement. The Class Notice shall direct Class Members to consult their own tax advisors regarding the tax consequences of the proposed settlement, including any payments, contributions or credits provided hereunder, and any tax reporting obligations they may have with respect thereto. Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

N. The Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

O. The Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking court approval of this Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed settlement.

P. This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.

### ORDER

WHEREAS Plaintiff and Defendants entered into a Stipulation of Settlement, with exhibits (collectively, the "Settlement Agreement"), dated April 27, 2001 to settle this class action (the "Action"); and

WHEREAS the Court entered an Order dated May 4, 2001 (the "Preliminary Approval Order"), modifying the Court's August 24, 1998 Order and certifying the class in this action for settlement purposes under Fed. R.Civ.P. 23(a), 23(b)(3), and 23(c)(2), ordering individual and publication notice to potential class members, scheduling a Fairness Hear-

ing for September 25, 2001, and providing those persons with an opportunity either to exclude themselves from the settlement class or object to the proposed settlement; and

WHEREAS the Court held a Fairness Hearing on September 25, 2001, to determine whether to give final approval to the proposed settlement; now, therefore,

Based on the submissions of the parties and Class Members, as that term is defined in Paragraph 3 below, and all prior pleadings and proceedings in this Action, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. *Incorporation of Other Documents.* This Order Approving Class Action Settlement incorporates and makes a part hereof:

   (a) the Stipulation of Settlement dated April 27, 2001, and filed with this Court on April 30, 2001; and

   (b) the following exhibits to the Stipulation of Settlement: (i) Exhibit A, Notice of Class Action, Proposed Settlement and Fairness Hearing (the "Class Notice Package"); (ii) Exhibit B, Summary Notice of Class Action, Proposed Settlement and Fairness Hearing (the "Publication Notice"); (iii) Exhibit C, Order Preliminarily Approving the Class Settlement, Directing the Issuance of Notice to the Class, and Scheduling a Fairness Hearing (the proposed "Preliminary Approval Order"); (iv) Exhibit D, Confidentiality Agreement for Discovery Materials Made Available to Settlement Class Members; (v) Exhibit E, Final Order Approving Class Action Settlement; (vi) Exhibit F, Benefit Voucher, and (vii) Exhibit G, Simplified Underwriting.

The Stipulation of Settlement and all exhibits and amendments thereto shall be referred to as the "Settlement Agreement."

2. *Jurisdiction.* Because adequate notice has been disseminated and all potential Class Members have been given the opportunity to opt out of this class action, the Court has personal jurisdiction over all Class Members (as defined below). The Court has subject-matter jurisdiction over this Action pursuant to 15 U.S.C. § 78aa, 28 U.S.C. §§ 1331, 1332, and 1367, including, without limitation, jurisdiction to approve the proposed settlement, grant final certification of the Class, and dismiss this action with prejudice.

3. *Final Class Certification.* The Class this Court previously certified for settlement purposes is hereby finally certified for settlement purposes under Fed.R.Civ.P. 23(a), (b)(3), and (c)(2), the Court finding that the Class fully satisfies all the applicable requirements of Fed.R.Civ.P. 23 and due process. The "Class" consists of all persons or entities ("Class Members") who own or owned any life insurance policy ("Policy") or any deferred annuity contract or certificate ("Annuity") issued by the Company pursuant an individual sale to: (i) persons who executed an application for a Policy or Annuity while in Switzerland, France, Italy, Spain, the Netherlands, Belgium, Norway and Greece during the period from January 1, 1957 through April 25, 1994; and (ii) persons who executed an application for a Policy or Annuity while in the United Kingdom during the period from January 1, 1967 through April 25, 1994. Notwithstanding the foregoing, the class shall not include (unless and to the extent such persons or entities are Class Members by virtue of their ownership interest in another Policy or Annuity) the following: (i) any persons or entities who make a timely election to be excluded from the proposed class with respect to a particular Policy (or Policies) or Annuity (or Annuities); and (ii) any persons or entities who have or had an ownership interest in a Policy or Annuity that (a) was terminated prior to the Execution Date due to the death of the insured, the annuity owner, or the annuitant; (b) was issued by the Company, but not accepted or paid for, or was returned to the Company as part of the exercise of a free look provision in the Policy or Annuity; or (c) was rescinded ($i$) as part of a reissue of a new Policy or Annuity; or ($ii$) because of a material misrepresentation on a Policy or Annuity application; (d) is an Annuity which, as of December 31, 1999, has annuitized or is paying out under the terms of the original annuity contract; or, (e) is the subject of a negotiated release (other than the negotiated release in *In re: Metropolitan Life Insurance Company Sales Practices Litigation,*

Misc. Docket No. 96–179, M.D.L. No. 1091 (W.D.Pa.)) signed by any person or entity settling a claim or dispute and releasing Defendants from any further liability concerning such Policy or Annuity.

4. *Adequacy of Representation.* The law firms of Conover & Zayas, LLP and Wechsler Harwood Halebian & Feffer LLP ("Plaintiff's Counsel"), and the Class Representative have fully and adequately represented the Class for purposes of entering into and implementing the settlement and have satisfied the requirements of Fed. R.Civ.P. 23(a)(4).

5. *Class Notice.* The Court finds that the Class Notice Package and its distribution to the Class, and the publication of the Publication Notice implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order:

   (a) constituted the best practicable notice to Class Members under the circumstances of this action;

   (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this action, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of the Class's representation by Plaintiff or Plaintiff's Counsel, and/or the award of attorneys' fees), (iv) their right to appear at the Fairness Hearing—either on their own or through counsel hired at their own expense—if they did not exclude themselves from the Class, and (v) the binding effect of the Orders and Judgment in this action, whether favorable or unfavorable, on all persons who do not request exclusion from the Class;

   (c) constituted notice that was reasonable and constituted due, adequate and sufficient notice to all persons and entities entitled to be provided with notice; and

   (d) constituted notice that fully satisfied the requirements of the Federal Rules of Civil Procedure (including Fed. R.Civ.P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), and any other applicable law.

6. *Final Settlement Approval.* The terms and provisions of the Settlement Agreement, including all exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, each of the parties and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law. The parties and Class Members are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

7. *Early Implementation.* The Company is hereby authorized, in its sole discretion but in consultation with Plaintiff's Counsel, and without requiring further approval of this Court, to implement the settlement before the Final Settlement Date (as defined in the Settlement Agreement), in which case all provisions in the Settlement Agreement specifying actions to be taken on or after the Final Settlement Date shall, to the extent necessary, be deemed to provide that those actions shall be taken on or after the date the Company elects to implement the settlement.

8. *Appeal After. Early Implementation.* If the Company chooses to exercise its discretion to implement the settlement before the Final Settlement Date, anyone seeking to appeal from this Court's rulings must first (i) request a stay of implementation of the settlement, and (ii) post an appropriate bond. Absent satisfaction of each of these requirements, the Company is authorized to proceed with implementation of the settlement, even if such implementation would moot any such appeal.

9. *Securities Registration Not Required.* The Court hereby finds that, to the extent that the right to designate another person as eligible to receive a Settlement Death Benefit or an Accidental Death Benefit under the

Settlement Agreement might be deemed to be a security under section 3(a)(10) of the Securities Act of 1933, as amended, registration of such right would not be required by virtue of the Court's approval of the settlement.

10. *Binding Effect.* The terms of the Settlement Agreement and of this Order and the accompanying Final Judgment shall be forever binding on Plaintiff and all other Class Members, as well as their heirs, executors and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in this Action or are otherwise encompassed by the Release.

11. *Release.* The following Release, which is also set forth in Section VII of the Stipulation of Settlement, is expressly incorporated herein in all respects, including all defined terms used therein, is effective as of the date of this Final Order and forever discharges the Releasees from any claims or liabilities arising from or related to the Released Transactions:

A. *Release and Waiver.* The following release and waiver shall take effect upon entry of the Final Order:

1. Plaintiff and all Class Members hereby expressly agree that they release, acquit and forever discharge all Releasees from and shall not now or hereafter institute, participate in, maintain, maintain a right to or assert against the Releasees, either directly or indirectly, on their own behalf, derivatively, or on behalf of the Class or of any other person or entity, any and all causes of action, claims, damages, awards, equitable, legal and administrative relief, interest, demands or rights, *including, without limitation,* claims for rescission, restitution or all damages of any kind, including those in excess of actual damages, and claims for mental anguish, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source of law of the United States or any other country or jurisdiction, that have been, could have been, may be or could be alleged or asserted by Plaintiff or any Class Member against the Releasees or any of them in this Action or in any other court action or before any administrative body (including any brought by or on behalf of any state attorney general or Department of Insurance or other regulatory entity or federal, state or local prosecutorial or other organization), tribunal, arbitration panel, or other adjudicatory body on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions, *including, without limitation:*

a. any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations that have been, could have been, may be or could be directly or indirectly alleged, asserted, described, set forth or referred to in the Complaint, Amended Complaint, or the Action;

b. any or all of the acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations allegedly made in connection with or directly or indirectly relating to the Released Transactions;

c. any and all claims for attorneys' fees, costs or disbursements incurred by Plaintiff's Counsel, Class Members, and/or any individual Class Member in this Action, or by Plaintiffs or the Class Members in this Action, or any of them, in connection with or related in any manner to the Action, the settlement of the Action, the administration of such settlement and/or the Released Transactions

except to the extent otherwise specified in the Settlement Agreement.

2. Nothing in this Release shall be deemed to alter (i) a Class Member's contractual rights (except to the extent that such rights are altered or affected by the election and award of benefits under the Settlement Agreement) to make a claim for contractual benefits that may become payable in the future pursuant to the express written terms of the Policy or Annuity issued by the Company; (ii) a Class Member's right to assert any claim that independently arises from acts, facts or circumstances arising after Execution Date; (iii) the status of claims released pursuant to the nationwide class action settlement in *Horton v. Metropolitan Life Insurance Company*, Civ. No. 93–1849–CIV–T–23A (M.D.Fla.); (iv) the status of claims released pursuant to the nationwide class action settlement in *In re: Metropolitan Life Insurance Company Sales Practices Litigation*, Misc. Docket No. 96–179, MDL No. 1091 (W.D.Pa.).

3. Plaintiff and all Class Members expressly agree that this Release will be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed by the release of the Releasees.

4. In connection with this Release, Plaintiff and the Class Members acknowledge that they are expressly aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true with respect to the Released Transactions occurring or arising before the Execution Date. Nevertheless, it is the intention of Plaintiff and the Class Members in executing this Release fully, finally and forever to settle and release all such matters, except as set forth in Paragraph 11.A.2. To

the extent that there exist principles of law which would not permit this Release to extend to claims that are presently unknown or unsuspected—notwithstanding that the Parties have chosen New York law to govern the Settlement Agreement—Plaintiff and the Class Members hereby agree that these principles of law are hereby knowingly and voluntarily waived and relinquished by Plaintiff and the Class Members. Plaintiff and the Class Members hereby agree and acknowledge that this is an essential term of both the Settlement Agreement and this Release.

5. Nothing in this Release shall preclude any action to enforce any of the terms of the Settlement Agreement, provided that such action shall be brought in the United States District Court for the Southern District of New York.

6. This Release is the result of a compromise of a disputed claim and shall never at any time be used as evidence of any admission of liability by any of the Defendants.

13. *Permanent Injunction.* Pursuant to the All–Writs Act, 28 U.S.C. § 1651(a), and the Anti–Injunction Act, 28 U.S.C. § 2283, and based on this Court's familiarity with the issues in this Action and the complexity of the nationwide class action settlement, the following Permanent Injunction is hereby issued:

A. All Class Members who have not been timely excluded from the Class with respect to a Policy or Annuity, and any other person, representative, or entity acting on their behalf or in concert or participation with any of them are permanently barred and enjoined from (i) filing, commencing, prosecuting, maintaining, intervening in, participating in (as Class Members or otherwise), or receiving any benefits or other relief from, any other claim, lawsuit, arbitration or administrative, regulatory or other proceeding or order in any jurisdiction based on, aris-

ing out of, or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Transactions as to that Policy or Annuity, and (ii) organizing or soliciting the participation of any Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any claim, lawsuit or other proceeding based on, arising out of, or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or the Released Transactions as to that Policy or Annuity.

B. Notwithstanding any other provision of this Final Order, all persons are hereby permanently barred and enjoined from starting or continuing any other lawsuit or proceeding as a class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in any pending action), on behalf of Class Members, if that other suit is based on or relates to the claims, facts or circumstances in this Action and/or the Released Transactions.

C. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the Action and to protect and effectuate the Court's Final Order and Judgment.

14. *Enforcement of Settlement.* Nothing in this Final Order shall preclude any action to enforce the terms of the Settlement Agreement.

15. *Attorneys' Fees and Expenses.* Counsel of record for the Class are hereby awarded expenses of $251,919.83 and attorneys' fees of up to $4,848,080.17 to be paid by the Company to Plaintiff's Counsel. Such fees and expenses are to be paid by the Company within ten days after entry of this Final Order, subject to the conditions set forth herein and in the Stipulation of Settle-

ment. Plaintiff's Counsel, in their sole discretion, shall allocate and distribute this award of attorneys' fees and expenses among counsel for the Class. Ten percent (10%) of the attorneys' fees, or $484,808.02, will be held in a separate interest bearing account and will constitute a fund out of which class counsel will be compensated for time spent implementing the settlement. Plaintiff class counsel will receive compensation from the fund on application to the Court as implementation of the settlement progresses. After all class members receive their Settlement awards, any money remaining in this fund will revert to MetLife.

16. *Incentive Awards.* The Court hereby awards $10,000 to be paid to Plaintiff Sally Dornberger; and $1500 to Class Members Joseph Anthony Miro, Franklin Craig, Frank Azevedo, Carlos Rodriguez–Del Valle, Athanasios Vellianitis, Paul Zahn, Massimo Corona and David Vargas as incentive awards.

17. *No Other Payments.* The preceding paragraphs 15 and 16 of this Final Order cover, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Plaintiff's Counsel or any other counsel representing Plaintiffs or Class Members, or any of them, in connection with or related in any manner to this Action, the settlement of this Action, the administration of such settlement, and/or the Released Transactions except to the extent otherwise specified in this Final Order and the Settlement Agreement.

18. *Modification of Settlement Agreement.* The parties are hereby authorized, without needing further approval from the Court, to agree to and adopt such amendments to, and modifications and expansions of, the Settlement Agreement, as are consistent with this Final Order and do not limit the rights of Class Members under the Settlement Agreement.

19. *Retention of Jurisdiction.* The Court has jurisdiction to enter this Final Order. Without any way affecting the finality of this Final Order, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Agree-

ment and of this Final Order, and for any other necessary purpose, including, without limitation,

A. enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Final Order (including, without limitation, whether a person or entity is or is not a Class Member; whether claims or causes of action allegedly related to this case are or are not barred by this Final Order, etc.);

B. entering such additional Orders as may be necessary or appropriate to protect or effectuate the Court's Final Order approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

C. entering any other necessary or appropriate Order to protect and effectuate this Court's retention of continuing jurisdiction;

provided, however, that nothing in this paragraph is intended to restrict the ability of the parties to exercise their rights under subsections 7 and 18 above.

20. *No Admissions.* Neither this Final Order nor the Settlement Agreement (nor any other document referred to herein, nor any action taken to carry out this Order) is, may be construed as, or may be used as, an admission or concession by or against the Defendants or Releases of the validity of any claim or any actual or potential fault, wrongdoing or liability whatsoever. Entering into or carrying out the Settlement Agreement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to the Defendants' denials or defenses and shall not be offered or received in evidence in any action or proceeding against any party hereto in any court, administrative agency or other tribunal for any purpose

whatsoever, except as evidence of the settlement or to enforce the provisions of this Final Order and the Settlement Agreement; *provided, however,* that this Final Order and the Settlement Agreement may be filed in any action against or by the Defendants or Releases to support a defense of *res judicata,* collateral estoppel, release, waiver, goodfaith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

21. *Dismissal of Action.* This Action, including all individual and Class claims resolved in it, is hereby dismissed with prejudice against Plaintiff and all other Class Members, without fees or costs to any party except as otherwise provided in this Order.

22. *Rule 58 Separate Judgment.* The Court will separately enter a Judgment in accordance with Fed.R.Civ.P. 58.

SO ORDERED.